

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Jeffrey J. Izant*
*Assistant United States Attorney*
*jeffrey.izant @usdoj.gov*

*36 South Charles Street*
*Suite 400*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4982*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

November 9, 2018

Deborah L. Boardman
First Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, MD 21201
Deborah_Boardman@fd.org

**BY ELECTRONIC AND INTEROFFICE MAIL**

Re:   United States v. Freddie Emerson Crockett, Criminal No. ELH-18-0166

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Freddie Emerson Crockett (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland (the "Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Friday, November 16, 2018**, it will be deemed withdrawn. The terms of the Agreement are as follows:

**Offenses of Conviction**

1.     The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). The Defendant admits that the Defendant is, in fact, guilty of the offense, and will so advise the Court.

**Elements of the Offense**

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the date alleged in the Indictment, in the District of Maryland –

a.     The Defendant knowingly possessed and knowingly accessed with intent to view one or more matters that contained any visual depiction of a minor engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2);

Rev. August 2018

b.     The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

c.     The Defendant knew that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and that it depicted a minor engaged in such conduct;

d.     The visual depiction had been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer, or was produced using materials that had been shipped or transported using any means or facility of interstate or foreign or in or affecting interstate or foreign commerce; and

e.     Any such visual depiction involved a prepubescent minor or a minor who had not attained 12 years of age.

### Penalties

3.     The maximum penalties provided by statute for the each offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessments |
|-------|---------|-------------|-------------|--------------------|-----------|---------------------|
| One | 18 U.S.C. § 2252(a)(4)(B), (b)(2) | 10 years | 20 years | Min: 5 years<br>Max: life | $250,000 | 18 U.S.C. § 3013(a): $100;<br>18 U.S.C. § 3014(a): $5,000 |

a.     *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.     *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.

d.     *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.     *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

Rev. August 2018

    f. *Collection of Debts*:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## **Waiver of Rights**

   4. The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the Government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and *the Court's* decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to: (i) the Statement of Facts set forth in Attachment A, which is incorporated by reference herein; and (ii) the following applicable sentencing guidelines factors:

Rev. August 2018

4

Offense of Conviction: Possession of Child Pornography – 18 U.S.C. § 2252(a)(4)(B), (b)(2)

      a.     *Base Offense Level:*  Pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2G2.2(a)(1), the base offense level for possessing material involving the sexual exploitation of a minor is 18.

      b.     *Prepubescent Minor or Minor Under 12:*  Pursuant to U.S.S.G. §2G2.2(b)(2), there is a 2-level increase because the material the Defendant possessed involved a prepubescent minor or a minor who had not attained the age of 12 years. [Subtotal: 20.]

      c.     *Pattern of Activity*:  Pursuant to U.S.S.G. §2G2.2(b)(5), there is a 5-level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 25.]

      d.     *Use of Computer*:  Pursuant to U.S.S.G. §2G2.2(b)(6), there is a 2-level increase because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. [Subtotal: 27.]

      e.     *Number of Images:*  Pursuant to U.S.S.G. §2G2.2(b)(7)(A), there is a 2-level increase because the offense involved at least 10 images, but fewer than 150 images. [Subtotal: 29.]

      f.     The adjusted offense level is 29.

Relevant Conduct: Transportation of Child Pornography – 18 U.S.C. § 2252(a)(1), (b)(1)

      g.     The Statement of Facts set forth in Attachment A to this Agreement specifically establishes the commission of an additional offense other than that to which the Defendant has agreed to plead guilty. Pursuant to U.S.S.G. §1B1.2(c), the additional offense is treated as if the Defendant had been convicted of an additional count charging that offense.

      h.     *Base Offense Level:*  Pursuant to U.S.S.G. §2G2.2(a)(2), the base offense level for transporting material involving the sexual exploitation of a minor is 22.

      i.     *Prepubescent Minor or Minor Under 12:*  Pursuant to U.S.S.G. §2G2.2(b)(2), there is a 2-level increase because the material the Defendant possessed involved a prepubescent minor or a minor who had not attained the age of 12 years. [Subtotal: 24.]

      j.     *Pattern of Activity*:  Pursuant to U.S.S.G. §2G2.2(b)(5), there is a 5-level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 29.]

      k.     *Use of Computer*:  Pursuant to U.S.S.G. §2G2.2(b)(6), there is a 2-level increase because the offense involved the use of a computer or an interactive computer service for

the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. [Subtotal: 31.]

l.   *Number of Images:* Pursuant to U.S.S.G. §2G2.2(b)(7)(A), there is a 2-level increase because the offense involved at least 10 images, but fewer than 150 images. [Subtotal: 33.]

m.   The adjusted offense level is 33.

### Grouping

n.   Pursuant to U.S.S.G. §3D1.2(d), the above-described offenses are combined into a single group.

o.   Pursuant to U.S.S.G. §3D1.3(a), the offense level applicable to the group is the highest offense level of the offenses in the group.

p.   Accordingly, the combined offense level is 33.

### Acceptance of Responsibility

q.   This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

r.   Accordingly, the final combined offense level is 30.

7.   There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **between 120 and 135 months' imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor this Office will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Sex Offender Registration and Additional Special Assessment

10.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act ("SORNA"), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

11.      Unless the Defendant is indigent, the Defendant must pay an additional special assessment of $5,000 for each count of conviction pursuant to 18 U.S.C. § 3014.

## Forfeiture

12.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

Rev. August 2018

     a.      Black Alcatel smartphone, model: A564C, bearing MEID DEC: 270113183512980080, and MEID HEX: A100003BC60F70;

     b.      4GB Toshiba microSD card; and

     c.      Alienware laptop, model: P19E, containing 750GB Western Digital hard drive, S/N: WX71A4386615.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Waiver of Appeal

17.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

     a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

     b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the

Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

18.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

## Defendant's Conduct Prior to Sentencing and Breach

19.    Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C); and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Consequences of Vacatur, Reversal, or Set-Aside

21.    If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this

Agreement and the commencement or reinstatement of such prosecution. The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final. The Defendant waives any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act.

### Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Sincerely,

Robert K. Hur
United States Attorney

By: _Jeff J. Izant /AME_

Jeffrey J. Izant
Judson T. Mihok
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_11/20/18_
Date

Freddie Emerson Crockett

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_11/20/18_
Date

Deborah L. Boardman, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Freddie Emerson Crockett ("Crockett"), age 40, was a resident of Earleville, Maryland. At all relevant times below, Crockett was registered as a Tier I sex offender on the Maryland Sex Offender Registry. Crockett used two accounts on the social networking website "Flickr," an online image-storage service provided by Yahoo, Inc., to transport and possess child pornography; Crockett also possessed child pornography on three electronic devices at his residence.

Transportation of Child Pornography

One of Crockett's Flickr accounts was registered to email address lordshackisac@yahoo.com and the alternate email address bcfdres1cue@yahoo.com. The name listed on the "lordshackisac" Yahoo account was "Freddie c," and user-provided location was Earleville, MD 21919. On October 20, 2016, Crockett knowingly uploaded at least 25 images depicting child pornography to his "lordshackisac" Flickr account.

On October 3, 2017, Yahoo deactivated lordshackisac@yahoo.com for possession of child pornography. The same day, Crockett created a new Flickr account registered to email address bcfdres1cue@yahoo.com. The name listed on the "bcfdres1cue" Yahoo account was "Fred C," and the user-provided location was "United States, 21919." At some point between October 3 and October 24, 2017, Crockett knowingly uploaded 4 images depicting child pornography to his "bcfdres1cue" Flickr account.

On October 4, 2017, Yahoo, Inc. reported to the National Center for Missing and Exploited Children ("NCMEC") that someone using email address lordshackisac@yahoo.com had uploaded 133 files containing possible child pornography to an affiliated Flickr account.

On October 16, 2017, Yahoo provided NCMEC with additional information about the "lordshackisac" account. Among other things, Yahoo reported that, through a common phone number, "lordshackisac" had been linked with several other Yahoo accounts, including "bcfdres1cue," "fcrockett33," "freddieemerson99," and "fred.crockett." Yahoo also identified public records indicating that a sex offender named Freddie Emerson Crockett had provided an address in Earleville, Maryland in connection with his registration. Finally, Yahoo reported that the last successful login to the "lordshackisac" account took place on May 23, 2017, and originated from an internet protocol ("IP") address that resolved to a subscriber near Elkton, Maryland.

On October 17, 2017, NCMEC provided Yahoo's report to the Maryland State Police ("MSP"). Through further investigation, MSP determined that the IP address utilized for the last successful login to the "lordshackisac" account was assigned to a high-speed internet subscriber

located at the same Earleville, Maryland, address that Crockett provided in connection with his sex offender registration.

On October 24, 2017, Yahoo reported to NCMEC that someone using email address bcfdres1cue@yahoo.com had uploaded 2 files containing possible child pornography to an affiliated Flickr account. On October 30, 2017, NCMEC provided Yahoo's report to MSP in light of the above-described connection between the "bcfdres1cue" and "lordshackisac" accounts.

Possession of Child Pornography

On November 22, 2017, law enforcement officers executed a search warrant at Crockett's residence in Earleville, Maryland. Crockett was present, and knowingly and voluntarily waived his <u>Miranda</u> rights, and agreed to speak with law enforcement. Crockett acknowledged that the "lordshackisac" and "bcfdres1cue" Yahoo accounts were his. Crockett also acknowledged using two password-protected electronic devices in the residence: a black Alcatel smartphone and an Alienware laptop, to which the password was "lordshackisac." Officers conducted an on-scene forensic preview of a memory card contained within the smartphone and located several images depicting child pornography.

Accordingly, officers seized the smartphone, the memory card, and the laptop. Law enforcement subsequently conducted an off-site forensic review and located child pornography on each device. Because each of the devices was manufactured outside the state of Maryland, they necessarily were transported in and affecting interstate and/or foreign commerce.

The smartphone was identified as a black Alcatel smartphone, model: A564C, bearing MEID DEC: 270113183512980080, and MEID HEX: A100003BC60F70. The mobile Flickr application was installed on the device. In a cached folder associated with the Flickr application, and in both cached and unallocated folders elsewhere on the device, investigators located a total of 45 images depicting child pornography. One of the images, a file named "ae3fc3276250a19142de48787d8b7329.0.jpg," depicts a naked prepubescent female lying on her back with her legs spread. The prepubescent female is using her hands to pull apart the lips of her vagina, and her genitalia are the focus of the image.

The memory card contained within the smartphone was a 4GB Toshiba microSD card on which investigators located 76 images depicting child pornography. Of those 76 images, 71 also had been uploaded to Crockett's "lordshackisac" Flickr account; and 4 had been uploaded to his "bcfdres1cue" Flickr account. On the SD card itself, all of the images were saved in allocated space; all but two of the images were saved in cached folders. One of the images, a file named "11-3427.jpg," depicts a naked prepubescent female lying on her back with her knees bent and legs spread. The image shows hands touching the prepubescent female's genitalia; the hands' thumbs are pulling her genitalia open.

The Alienware laptop, model: P19E, contained a 750GB Western Digital hard drive bearing S/N: WX71A4386615, on which investigators located data indicating that it had been used to access Flickr. In unallocated—<u>i.e.</u>, deleted—space of the hard drive, investigators located 2 images depicting child pornography. One of the child pornography images, a file named "2-

Rev. August 2018

363532.jpg," depicts a close-up of a prepubescent female spreading her legs, exposing her genitalia.  The image also depicts an erect penis between the legs of the prepubescent female.

Finally, on November 22, 2017, Crockett had two prior convictions under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography.  Specifically, on December 1, 2010, Crockett was convicted in the Circuit Court of Maryland for Cecil County on two counts of conducting visual surveillance with prurient intent of an individual in a private place without the individual's consent, in violation of Title 3, section 902(c)(1), of the Criminal Law Article of the Maryland Code.  The two convictions related, respectively, to Crockett's surreptitious recording, on separate occasions, of a 13-year-old female and a 16-year-old female while they were changing clothes inside a bathroom at his residence.

SO STIPULATED:

Jeffrey J. Izant
Judson T. Mihok
Assistant United States Attorneys

Freddie Emerson Crockett
Defendant

Deborah L. Boardman, Esq.
Counsel for Defendant