IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

FREDDIE EMERSON CROCKETT,
*Defendant.*

Criminal Action No. ELH-18-166

**MEMORANDUM OPINION**

Defendant Freddie Crockett, proceeding *pro se*, filed a filed a "Petition for Compassionate Release" (ECF 47), along with one exhibit (ECF 47-1). Thereafter, Crockett, through appointed counsel, filed an "Emergency Supplemental Motion for Compassionate Release" (ECF 50) supported by a memorandum. ECF 52. I shall refer to the submissions collectively as the "Motion." Defendant, through counsel, submitted additional exhibits. ECF 52-1 to ECF 52-6. The government opposes the motion (ECF 56), and submitted two exhibits. ECF 56-1; ECF 56-2. The defendant replied. ECF 58. On August 24, 2020, defense counsel submitted a letter to the Court stating that as of that date, there were 58 reported infections among inmates and two reported infections among staff at FCI Petersburg Low, where the defendant is incarcerated. ECF 60.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.   Background**

On March 27, 2018, a grand jury sitting in the District of Maryland returned an Indictment charging Crockett with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(b)(2). ECF 1. The Indictment also contained a "Special Allegation," which alleged that on or about December 1, 2010, Crockett was convicted in the Circuit Court for Cecil County, Maryland of two counts of conducting visual surveillance with prurient intent. *Id.*

Crockett was arrested on State charges on November 22, 2017. Those charges were later dismissed. But, Crockett has been in custody since that date.

Pursuant to a Plea Agreement (ECF 33), Crockett entered a plea of guilty in this Court on December 13, 2018. ECF 32. The offense at issue carried a mandatory minimum term of imprisonment of ten years. ECF 33, ¶ 3. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). *Id.* ¶ 9. Under the Plea Agreement, the parties agreed to a term of imprisonment ranging from 120 to 135 months in prison. *Id.* The Plea Agreement also included a stipulation as to relevant conduct: transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). *Id.*, ¶ 6g-6m.

According to the parties' factual stipulation, *id.* at 11-13, on October 20, 2016, the defendant knowingly uploaded at least 25 images depicting child pornography to the social networking site "Flickr." *Id.* at 11. Flickr is an online image-storage service provided by Yahoo, Inc. *Id.* Nearly one year later, on October 3, 2017, Yahoo deactivated the Flickr account that Crockett had used to upload the images. *Id.* That day, Crockett created a new Flickr account, registered to a different email address. *Id.* Sometime between October 3 and October 24, 2017, the defendant uploaded four images to that account, depicting child pornography. *Id.*

On October 4, 2017, Yahoo reported to the National Center for Missing and Exploited Children ("NCMEC") that someone using the first of the two aforementioned Flickr accounts had uploaded to Flickr "133 files containing possible child pornography." *Id.* Thereafter, on October 16 and October 24, 2017, Yahoo reported to NCMEC additional information about both of those Flickr accounts. *Id.*

In October 2017, NCMEC, in turn, provided the Maryland State Police ("MSP") with the information it received from Yahoo. *Id.* at 11-12. The MSP determined that the internet protocol

address from which the last login to one of the Flickr accounts originated was assigned to an internet subscriber located at the same address as the defendant's Maryland sex offender registration. *Id.*

On November 22, 2017, law enforcement officers executed a search warrant at Crockett's residence in Earleville, Maryland. *Id.* at 12. Crockett voluntarily waived his *Miranda* rights and agreed to speak with the officers. *Id.* He acknowledged that the two Flickr accounts under investigation were his, and to using a smartphone and laptop located in the residence. *Id.* After law enforcement located several images depicting child pornography on a memory card in the smartphone during an "on-scene forensic preview," officers seized the smartphone, memory card, and laptop. *Id.*

A forensic review located a total of 123 images depicting child pornography on all three of the devices. *See id.* At least 75 of those images had been uploaded to one of Crockett's Flickr accounts, and at least three depicted prepubescent minors under the age of twelve. *Id.* at 12-13.

According to the stipulation, on December 1, 2010, defendant was convicted in the Circuit Court for Cecil County of two counts of conducting visual surveillance with prurient intent of an individual in a private place without consent, in violation of Md. Code (2012 Repl. Vol.), § 3-902(c)(1) of the Criminal Law Article. *Id.* Further, the stipulation stated: "The two convictions related, respectively, to Crockett's surreptitious recording, on separate occasions, of a 13-year-old female and a 16-year-old female while they were changing clothes inside a bathroom at his residence." *Id.*[1]

The Presentence Report ("PSR," ECF 36) determined that defendant had a final offense level of 30. *Id.* ¶ 38. And, he had a Criminal History Category of II. The corresponding advisory

---

[1] Additional facts were included in the government's sentencing memorandum. ECF 37.

sentencing guidelines ("Guidelines" or "U.S.S.G.") called for a sentence ranging between 108 and 135 months of incarceration. *Id.* ¶ 66. However, under 18 U.S.C. § 2252(a)(4)(B) and (b)(2), there is a mandatory minimum term of imprisonment of ten years. *Id.* ¶ 65. As a result, the Guidelines range for Crockett's sentence was 120 to 135 months of imprisonment. *Id.* ¶ 66. That corresponded to the terms of the C plea. *See* ECF 33, ¶ 9.

Sentencing was held on March 26, 2019. ECF 41. At the time of sentencing, the defendant was 40 years of age. Of relevance here, the PSR stated that Crockett "advised he was diagnosed with Diabetes . . . in 2017 and he also has . . . high blood pressure[.]" ECF 36, ¶ 54.

The Court sentenced Crockett to a term of imprisonment of 120 months, with credit for time served since November 22, 2017. ECF 44 (Judgment) at 2-3. In addition, the Court imposed a period of lifetime supervised release. *Id.*[2]

Crockett, who is now 42 years old, *see* ECF 36 at 2, is presently incarcerated at FCI Petersburg Low. *See* ECF 47 at 4; ECF 56-2. He has served approximately 25% of his projected sentence. With credit for good time, the defendant has a projected release date of May 31, 2026. *See* ECF 52 at 3; ECF 56 at 18; *see also* ECF 52-2 at 3.

On May 6, 2020, Crockett submitted a *pro se* "Request for Compassionate Release/Reduction in Sentence" to the Warden of FCI Petersburg, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 47-1. The request described Crockett's various health conditions, including

---

[2] Among other things, Crockett must: (1) register as a sex offender, pursuant to the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, *et seq.*, as well as Maryland law; (2) may not have direct contact with any minor without the permission of the probation officer; (3) submit his computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search; (4) allow the probation officer to install computer monitoring software on any computer (as defined in the above statute) Crockett uses; (5) participate in a mental health treatment program; and (6) participate in a sex offense-specific treatment program. ECF 44 at 3-4.

diabetes and high blood pressure, but did not mention the pandemic. *Id.* The following day, Crockett filed his "Petition for Compassionate Release.". ECF 47; ECF 47-1. The petition prominently addresses Covid-19. *See* ECF 47. Then, on May 27, 2020, the Warden of FCI Petersburg denied defendant's request. ECF 56-2. On August 11, 2020, defense counsel submitted a second request for compassionate release to the Warden, which explicitly addresses COVID-19. ECF 58-1.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant *see*king compassionate release had to rely on the BOP Director for relief. *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on*

*Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing

6

Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See, e.g., United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560

8

U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[3]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any *see*n for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[4] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of September 25, 2020, COVID-19 has infected more than seven million Americans and caused over 200,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Sept. 25, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools have reopened, many are subject to substantial restrictions. And, in view of the recent resurgence of the virus in certain parts of the country, businesses and schools are again facing closure or restrictions.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v.*

11

*Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the

Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

The BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 56 at 16-18 (detailing measures that BOP has implemented at FCI Petersburg Low). Nevertheless, as with the country as a whole, the virus persists in penal institutions.[5] As of September 25, 2020, the BOP reported that 1,995 inmates and 703 BOP staff currently tested positive for COVID-19; 12,505 inmates and 1,118 staff have recovered; and 124 inmates and two staff members have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 25, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. And, as of September 25, 2020, there were 13 reported active infections among the inmates and three infections among the staff at FCI Petersburg Low. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. The medium security facility in Petersburg had 41 active cases among the inmates and three among the staff as of September 25, 2020. *See id.* As noted, the number of active cases at FCI Petersburg Low was higher in recent weeks. *See* ECF 60.

---

[5] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

13

## IV.   Discussion

Under 18 U.S.C. § 3582(c)(1)(A)(i), Crockett seeks a reduction of his sentence of imprisonment to time-served.  *See* ECF 50; ECF 52 at 19.  He proposes to serve an extended term of home confinement with location monitoring as an added condition of supervised release.  ECF 52 at 19.

### A.   Administrative Exhaustion

The Court must first determine whether Crockett has exhausted his administrative remedies.  This issue is hotly contested, and the parties devote considerable attention to the issue in their filings.

In brief, Crockett contends that his request of May 6, 2020, satisfied the exhaustion requirement even though he did not explicitly include the words "Covid-19" or "pandemic."  ECF 58 at 2-4.  The request of May 6 did, however, assert that the defendant's high blood pressure, diabetes, and high cholesterol, among other ailments, constitute extraordinary and compelling circumstances that warrant release.  *See* ECF 47-1.  Crockett asserts: "'The warden obviously knew . . . that there was a worldwide pandemic, and any sensible person would realize that the COVID-19 pandemic was implicated by this request, whether it was specifically mentioned or not.'" (Quoting *United States v. Hamrick*, No. 1:19-CR-91, 2020 WL 4016037, *2-3 (M.D. N.C. July 16, 2020)).  Further, Crockett argues that if the Court were to decide that the omission of certain "magic words" is fatal to the request, it would be imposing an "issue exhaustion" requirement onto § 3582(c)(1)(A), which both law and common sense counsel against.  *See, e.g. United States v. Brown*, __ F. Supp. 3d __, 2020 WL 2091802, at *3-4 (S.D. Iowa Apr. 29, 2020) (discussing *Sims v. Apfel*, 530 U.S. 103, 110 (2000)).

14

Crockett cites multiple opinions in which courts have determined that the exhaustion requirement was satisfied despite the absence of any explicit reference to the pandemic in the administrative request. *See, e.g.*, *Hamrick*, 2020 WL 4016037, *2-3; *United States v. Gutman*, RDB-19-0069, 2020 WL 2467435, at *1 (D. Md. May 13, 2020); *see* also *United States v. Fletcher*, TDC-05-00179, 2020 WL 3972142, at *3 (D. Md. July 13, 2020).

The government's view of the issue is diametrically opposed to Crockett's. In essence, the government contends that the request of May 6, 2020, did not put the BOP on notice of Crockett's concern that his physical health rendered him particularly vulnerable to COVID-19, and thus gave BOP no opportunity to "contemplate" a reduction in sentence on that ground. *See* ECF 56 at 24-25. Other courts have reasoned similarly. *See, e.g.*, *United States v. Jenkins*, No. 4:15-cr-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); *United States v. Mogavero*, No. 2:15-cr-0074-JADNJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020). Moreover, the government asserts that a contrary conclusion would "risk[] suggesting indifference to BOP's view on the question." ECF 56 at 26.

Even assuming, for argument's sake, that the request of May 6, 2020, did not satisfy the exhaustion requirement, the request of August 11, 2020 did so. *See* ECF 58-1. And, thirty days have elapsed since defense counsel submitted a new request to the Warden of FCI Petersburg Low. Thus, the request is ripe for review under 18 U.S.C. § 3582(c)(1)(A).

### B.    Extraordinary and Compelling Circumstances

As to grounds for relief under § 3582(c)(1)(A)(i), Crockett asserts that he suffers from a "constellation of conditions [that] places him at serious risk of becoming severely ill from COVID-19," including type II diabetes, obesity, and hypertension, among others. ECF 52 at 1. The government concedes that, pursuant to the position of the Department of Justice, Crockett's

documented medical conditions constitute an "extraordinary and compelling" basis for relief. ECF 56 at 26.

### C. Application of the Section 3553(a) Factors

Relief is appropriate only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), as required by § 3582(c)(1)(A).

The § 3553(a) factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; and (4) any pertinent Sentencing Commission policy statements.

To determine whether a defendant is a danger to the community, 18 U.S.C. § 3142(g) directs the court to consider the (1) "nature and circumstances of the offense charged"; (2) the "weight of the evidence against the person"; (3) the "history and characteristics of the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release."

This was a serious offense. Although Crockett pleaded guilty to just one count of possession of child pornography, he stipulated to facts that established the commission of the offense of transportation of child pornography. In particular, Crockett stipulated to uploading at least 75 images to the internet, via a Flickr account, several of which depicted prepubescent minors. ECF 33 at 12-13.

Moreover, Crockett was convicted in 2010 on charges involving two minors. Significantly, that earlier prosecution did not deter the defendant from engaging in the conduct that led to his federal prosecution. As the government details in its Opposition, evidence that the government

16

included in its Sentencing Memorandum concerning uncharged conduct tends to show that in September 2017, the defendant discussed engaging in additional unlawful sex-related conduct via text message. *See* ECF 56 at 9-10.

Even so, Crockett's crime and relevant criminal history resulted in the relatively low Criminal History Category of II. As the defendant notes, other courts have concluded that child pornography-related convictions are not an automatic bar to compassionate release for defendants who are especially vulnerable to COVID-19, even where they have several years of imprisonment remaining on their sentences. *See, e.g.*, *United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020); *United States v. Moit*, No. 2:17-CR-83-PPS, 2020 WL 4558953, at *1 (N.D. Ind. June 29, 2020).

The parties sharply dispute whether the defendant would pose a danger to the community if released. In support of the argument that the defendant will not pose a danger to the community upon release, Crockett points to the following, among other things. First, he has a "stable release plan." ECF 52 at 18. Under the plan, Crockett will reside only with his mother and aunt. *Id.*; *see* EF 52-6. Second, the defendant has already "committed to making positive changes in his life." *Id.* As proof, he notes that he has a spotless record at FCI Petersburg Low, and has accordingly accrued credit for good time, as noted. Perhaps most important, Crockett contends that the original, restrictive conditions of lifetime supervised release will "ameliorate any risk that he might pose to the community," and will be buttressed by the additional condition he now requests, of an extended term of home confinement with location monitoring. *Id.* at 19.

At bottom, the government argues that the defendant's "conduct and character," drawn from the stipulation of facts as well as the sentencing memorandum, "demonstrate that he remains an unacceptable danger to the community." ECF 56 at 34. In particular, the government casts

17

doubt on Crockett's contention that he has already committed to self-improvement, as he has not sought transfer from FCI Petersburg Low to a facility where sex offender treatment is offered, including the medium security facility located within the same complex. *Id.* at 31. Moreover, the government argues forcefully that the Court cannot be certain that Crockett, a proven recidivist, would be unable to again engage with child pornography using readily available technology. *Id.* at 31-32.

However, the government does not directly confront the conditions of lifetime supervised release originally imposed. As noted, under those conditions Crockett will be required, among other things, to submit his computers and related electronic communications or data storage devices to search by the probation officer, and to allow the probation officer to install computer monitoring software on any computer he uses.

Nevertheless, considering all of the factors, I conclude that Crockett would pose a danger to the community if released at this juncture, after serving only about 25% of his sentence. I do not arrive at this conclusion lightly. However, the recency of Crockett's current conviction, and the fact that he is a repeat offender, weigh heavily. Moreover, he has not had any sex offender treatment. *See United States v. Wooley*, No. 6:13-cr-00224-AA, 2020 WL 2490093, at *3 (D. Or. May 14, 2020) (denying compassionate release upon concluding that the defendant posed a danger to society because he had not completed BOP's sex offender treatment programs). Although the conditions of supervised release would likely reduce the risk of any harm that Crockett might cause, they do not, at least without additional information regarding the implementation of such conditions, provide sufficient assurance that Crockett is not presently a risk to the community. Under 18 U.S.C. § 3582, the burden is, of course, the defendant's to carry. *See Hamilton*, 715 F.3d at 337.

Accordingly, because I find that Crockett would pose a danger to the community if released, he is not eligible for compassionate release under 18 U.S.C. § 3582.

## V. Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 47) and the Supplemental Motion (ECF 50, ECF 52), without prejudice. A separate Order follows.


Date: September 25, 2020                      /s/
                                      Ellen Lipton Hollander
                                      United States District Judge